UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                                     Criminal No. 3:19-CR-00050-02

vs.                                                          HON. BERNARD A. FRIEDMAN

ALISA HAYNES,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR EARLY TERMINATION OF SUPERVISED RELEASE**

This matter is presently before the Court on defendant's motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). (ECF No. 129). The government has not responded and the deadline for doing so has expired. For the following reasons, the Court shall deny the motion.

On November 12, 2019, defendant pled guilty, pursuant to a Rule 11 plea agreement, to one count of Tampering with a Witness, Victim or Informant, in violation of 18 U.S.C. § 1512(b)(1). The factual basis for defendant's guilty plea is set forth in the plea agreement at paragraph 19 as follows:

> a.     In December 2017, Anthony Haynes and others were under federal indictment for sex trafficking of children and production of child pornography (Case No. 3:17CR158). One of the witnesses in that case was Victim #1. A jury trial was scheduled to commence on January 22, 2019 and Victim #1 was subpoenaed to testify at that jury trial.
>
> b.     Anthony Haynes's wife is ALISA HAYNES and his stepdaughter is ALEXIS FORTUNE. On or about January 4, 2019, and continuing until on or about January 5, 2019, in the Northern District of Ohio, Western Division, ALISA HAYNES and ALEXIS FORTUNE knowingly corruptly persuaded, or attempted to corruptly persuade Victim #1, with the intent to influence, delay, or prevent Victim 1's

testimony in the federal criminal trial against Anthony Haynes.

c. On January 4, 2019, around 11:30 p.m., ALEXIS FORTUNE and ALISA HAYNES went to Victim #1's apartment. Victim #1 and her 15-year old sibling, Victim #2, were alone at the apartment. ALEXIS FORTUNE, ALISA HAYNES, Victim #1 and Victim #2 remained together for the next several hours including the early morning hours of January 5, 2019 and, during that time frame, traveled to several locations within the City of Toledo, Ohio.

d. Over the course of the evening of January 4, 2019 and continuing to the early morning hours of January 5, 2019, either FORTUNE or ALISA HAYNES drove FORTUNE's boyfriend's vehicle to various locations in Toledo, Ohio.

e. On January 5, 2019, at approximately 5:46 a.m., FORTUNE gave Victim #1 her cellular phone for the specific purpose of Victim #1 leaving a voicemail on ALISA HAYNES's cellular phone about the upcoming trial regarding Anthony Haynes. Based on FORTUNE's and ALISA HAYNES's request and persuasion, Victim #1 complied and used FORTUNE's cellular phone to call ALISA HAYNES's cellular phone. Victim #1 left two voicemails, one right after the other, on ALISA HAYNES's cellular phone. In the second voicemail, VICTIM #1 recanted her earlier statement to law enforcement and stated that she was never sex trafficked by Anthony Haynes. FORTUNE and ALISA HAYNES intended to share these voicemails with Anthony Haynes's attorney to be used at Anthony Haynes's upcoming trial.

f. On January 5, 2019, around 7:10 a.m., Victim #1 notified the FBI of the events that transpired with FORTUNE and ALISA HAYNES in that they persuaded her to recant her previous statements to law enforcement in recordings.

g. On March 26, 2019, Victim #1 testified in federal court against Anthony Haynes in support of the sex trafficking of children and production of child pornography charges. This testimony was consistent with her previous statements to law enforcement and directly contradicted the voicemails left in the early morning hours of January 5, 2019.

h. All of defendant's actions were in violation of Title 18, United States Code, Sections 1512(b)(1).

(ECF No. 86, PageID.241-43). On May 20, 2020, the Court sentenced defendant to twenty-four

months' imprisonment, followed by a three-year term of supervised release.[1] (ECF No. 107, PageID.411-12).

In the instant motion, defendant requests that the Court "grant an early termination of her term of probation, which is otherwise set to expire on or about 09/17/2023." (ECF No. 129, PageID.520). She states that she "has conducted herself in an exemplary manner while on probation," and "has fully complied with all terms of her sentence of probation." (*Id*.). Defendant adds that "[i]n addition to the "Standard Conditions of Supervision", [she]: 1) Completed Unison Behavior Health. 2) Is gainfully employed. 3) She has been helping the community with credit repair. [4]) Has paid a One Hundred Dollar ($100.00) Special Assessment. [5]) Has had no violations; and [6]) Has reported on time." (*Id*., PageID.521).

> Pursuant to § 3583(e)(1),
>
> the court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

The Sixth Circuit has explained that

> [t]he plain language of the statute illustrates that § 3583(e), in the typical case, allows a conduct-based inquiry into the continued necessity for supervision after the individual has served one full year on supervised release.
>
> The statute, however, is not exclusively limited to considerations of conduct. The language of the statute notes that the district court "may" terminate supervised release if it is satisfied that such action is warranted by the conduct of the defendant released and the

---

[1] Because defendant was given credit for time served prior to her date of sentencing, she began her term of supervised release on September 17, 2020. (ECF No. 129, PageID.521).

> interest of justice. The phrase "the interest of justice" gives the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period. The conjunction "and" used in the statute clearly indicates that a district court must conclude that the early termination of supervised release is warranted both by the individual's conduct and also by the interest of justice.

*United States v. Suber*, 75 F. App'x 442, 443-44 (6th Cir. 2003) (citation omitted).

Although defendant's conduct while on supervised release has been commendable, the Court does not believe that early termination of supervised release would serve the interest of justice, the public, or defendant at this time. Under § 3553(a) the sentence imposed by the Court must, among other factors, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," it also must "afford adequate deterrence" and "protect the public from further crimes of the defendant." Section 3553(a)(2)(A)-(C). Defendant was convicted of a serious crime, the underlying facts of which are egregious. She held two victims against their will in order to corruptly influence one of the victim's testimony at a federal criminal trial in a case that involved the sex trafficking of minors. Given the seriousness of defendant's conduct, the Court concludes that the requested relief is unwarranted at this time. Accordingly,

IT IS ORDERED that defendant's motion for early termination of supervised release (ECF No. 129) is denied.

s/Bernard A. Friedman<br>
BERNARD A. FRIEDMAN<br>
SENIOR UNITED STATES DISTRICT JUDGE<br>
SITTING BY SPECIAL DESIGNATION

Dated: July 6, 2022
      Detroit, Michigan